UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              Case No. 6:06-bk-01227-ABB
                                                    Chapter 7
PAMELA W. CLARK,

    Debtor.
_____/

MARK D. SHAPIRO and GOGUYS, INC.,

                                                    Adv. Pro. No. 6:06-ap-00136-ABB
    Plaintiff,

vs.                                                 **FILED**

PAMELA W. CLARK,                                    **JAN 1 6 2009**

    Defendant.                                   CLERK U.S. BANKRUPTCY,
_____/                         ORLANDO DIVISION

### MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT DETERMINING DEBT NONDICHARGEABLE

This matter came before the Court on the Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. §523(a)(2)(A), (a)(4) and (a)(6), against Pamela W. Clark, the Debtor herein ("Clark"). Plaintiffs, Mark D. Shapiro and Goguys, Inc., ("Shapiro"), allege a debt owed pursuant to a Final Statement of Decision and Default Judgment of the Santa Clara County Superior Court ("Complaint," Doc. No. 1). A hearing was held on November 13, 2008 on Shapiro's Motion for Summary Judgment (Doc. No.5), at which counsel for Shapiro and counsel for Clark appeared. The Parties were granted leave to submit additional evidence for the consideration of the Court. The

Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and other documents filed herein, the arguments of counsel, the evidence presented, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Relationship of the Parties*

Clark's husband, Barry W. Clark and his company, Tax Advantage, Inc. ("B.W. Clark" and/or "TAI"), provided tax and financial services to Shapiro, including tax and retirement planning, and mortgage and investment broker services. From approximately February 2002 to May 2003, Shapiro loaned TAI $250,000 to provide a guaranteed ten-percent return and an equity interest in a TAI real estate project. TAI breached the agreement with Shapiro.[1]

### *The First California Fraud Lawsuit*

Shapiro filed an action, <u>Shapiro v. Barry W. Clark, Andrew T. Cook and Tax Advantage, Inc.</u>, in the California Superior Court, County of Santa Clara on February 8, 2004, Case No. 1-04-CV-035281, alleging causes of action for (i) alter ego, (ii) fraud, (iii) conversion, (iv) breach of fiduciary duty, (v) breach of contract, and (vi) an accounting. A default judgment of $1,851,551.26 in favor of Shapiro was entered against B.W. Clark and TAI, as alter egos, which became final in April 2005 (the "Barry Clark Judgment").

---

[1] Doc. No. 1, Exhibit 2.

2

### *The Second California Fraud Lawsuit*

On August 3, 2005, Shapiro filed a second lawsuit in the Santa Clara Superior Court against Clark, B.W. Clark and TAI alleging fraudulent transfer, fraud, deceit, constructive fraud, constructive trust, conversion, conspiracy and an accounting.[2] The Defendants failed to answer. On October 17, 2005, the California Court entered its "Statement of Decision and Default Final Judgment by Court" (the "California Default") against Clark and the other defendants. In rendering judgment for Shapiro, the Superior Court in the California Default concluded:

> Clark received and accepted fraudulently transferred funds of $298,558.37 from her husband, B.W. Clark and his adjudicated alter ego TAI, for improvements on her Tavares Property.
>
> Clark failed to reveal, and suppressed, the fact the transfers were to be, and had been made, for her and her husband's benefit.
>
> Clark acted intentionally, with fraud, malice, oppression, and demonstrated a subjective motive to inflict injury or believed that that injury was substantially certain to occur to Shapiro as a result of her conduct, all without just cause or excuse.
>
> Clark, by means of her fraudulent conduct, misappropriated and converted to her personal use and possession, without Shapiro's knowledge or consent, Shapiro's money.
>
> Clark transferred $298,558.37 or more to contractor, W. Lee Humphrey Builders who, for consideration of such transfers, made improvements on the Tavares Property of which both the Clark and

---

[2] Case No. 1-05-CV-046414.

B.W. Clark were later co-owners, and the Clarks personally benefited from the transfer.

Clark wrongfully converted Shapiro's funds. The prolonged taking was without consent or permission, express or implied, of Shapiro, and although Shapiro made demands on Clark, she failed to return or deliver Shapiro's money, as a proximate result of which caused Shapiro's damage.

### *Motion to set aside the California Default Judgment*

Clark filed a belated motion to set aside the California Default, arguing in her motion and declarations she was diligent in her efforts to respond to Shapiro's complaint, but circumstances beyond her control prevented it. She raised the defense that she was not involved in B.W. Clark's and TAI's relationship with Shapiro's investment/loan with them. During one of the several hearings held on the motion to set aside the California Default, Shapiro asserted the Clarks' would complete the construction of the Florida house; be able to claim a Florida unlimited homestead exemption; and shield themselves from Shapiro's collection efforts on both the Barry Clark Judgment and the judgment sought against Clark in the second suit. Shapiro requested any order setting aside the default be conditioned on Clark posting a bond in the full amount prayed. The Trial Court expressed its concern, according to the Appellate Court, that:

> I can conclude based on this set of facts one of two things. She's a part [and] parcel of it or she's completely innocent. Based on all that I have reviewed, I am hard put to conclude that she [Clark] has no clue to what is going on. So, for the sake of what is happening here and I believe that the potential for a huge [injustice] would occur, I am going to grant the relief that he [Shapiro] is asking for. I will grant the motion to set aside the default, but it's going to be conditioned on posting of a bond as

requested by the plaintiff or the other parties regarding transferring, conveying, whatever.[3]

The Trial Court conditionally granted Clark's Motion to set aside the default on February 8, 2006, with a proviso that Clark post a continuous bond of $1,800,000.00; pay Shapiro's attorney's fees and costs of $14,500, no later than February 14, 2006; and prohibited homestead, transfer or encumbrance of the Tavares Property, until the conditions were satisfied (the "Relief from Default").[4]

Clark did not satisfy the conditions precedent to the order setting aside the California Default and she appealed the California Default.

### *Appeal of the California Default Judgment*

Clark appealed the California Default to the Court of Appeal, Sixth District, California, Shapiro v. Clark, 164 Cal. App. 4th 1128.

Clark argued both the underlying excuse for her original default in answering the Complaint as the death of her son, travel and other difficulties with her lawyers. She also asserted "she denies involvement in any of the fraud and deceit practiced on [Shapiro]."[5] Shapiro countered with declarations asserting Clark was not an innocent spouse, but was personally involved in B.W. Clark's business and sham development projects.[6]

The Court of Appeal recited the comments of the Trial Court that he:

> [W]as concerned about the risk that vacating the judgment would permit appellant and Clark to avoid collection: '[O]ther than all the red flags that are flying all over this thing, the likelihood is I would grant her relief. There is a bunch of stuff that went on. The death of her son. Being in Florida.... [T]here is some interruption in communication and all of that stuff.' Yet the court was concerned that 'if I grant the relief you're seeking,

---

[3] Shapiro v. Clark, 164 Cal. App. 4th 1128, 1147.

[4] Doc No. 40, Shapiro Exhibit 2.
[5] Shapiro, 164 Cal. App. 4th, at 1145.
[6] Id. at 1146.

5

> I'm doing a huge disservice to the plaintiff because I think the plaintiff is going to be hung out to dry....' The [trial] court later commented on the apparent magnificence of the house appellant and Clark were constructing in Florida, and then observed that based on respondent Shapiro's declaration, he 'got screwed.'[7]

The Court of Appeal held that (1) Clark's appeal was not timely; (2) the trial court properly granted relief from the California Default; (3) the trial court properly ordered security for the potential award of compensatory damages; (4) the security in the Relief From Default was excessive, since it included punitive damages. The Court of Appeal then adverted to the further delays that a remand would bring and stated "In the interest of judicial economy, we will set the amount of security at $400,000...." plus the attorney's fees set forth in the Relief from Default.[8] The appeal from the California Default was dismissed.

Clark had a second opportunity to present her case in the Superior Court. She did not post the reduced bond, and the Court of Appeals decision became final during the pendency of this bankruptcy case. There was no excusable neglect in her untimely motion for reconsideration in the trial court or her untimely appeal from the California Default even if there may have been in Clark's default on her answer. Nor was there an excuse for failing to post the bond first required by the Trial Court and then modified by the Court of Appeal. The California trial and appellate courts gave Clark the opportunity to litigate her defenses. Clark should not be afforded the right to litigate those decided issues in her bankruptcy case.

---

[7] Id. at 1145

[8] Id. at 1150-51.

### *Proceedings in Bankruptcy*

Clark filed this Chapter 7 case on May 26, 2006 ("Petition Date"), which stayed her appeal pending in the Court of Appeal. Shapiro was granted relief from stay for all aspects to finalize the appeal.[9] Shapiro filed the final order of the California Court of Appeal on October 2, 2008 and Clark was provided an opportunity to respond to Shapiro's Motion for Summary Judgment.[10]

### *Nondischargeability and Summary Judgment Elements*

Shapiro requests the California Default Judgment be deemed nondischargeable pursuant to Sections 523(a)(2)(A), 523(a)(4) and 523(a)(6) of the Bankruptcy Code.

Shapiro established each of the nondischargeability elements of Sections 523(a)(2)(A) and 523(a)(6) in the California Default.[11] Clark, by virtue of her default, is bound by the findings of the California Superior Court. The California Default establishes each requisite element of nondischargeability of a debt pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(6): Clark made a false representation to deceive the Shapiro; Shapiro relied on the misrepresentation; Shapiro's reliance was justified; and Shapiro sustained a loss as a result of the misrepresentation. Clark, pursuant to her default in the California litigation, admitted each of the allegations of the complaint. Collateral estoppel applies to preclude Clark from re-litigating the issue of whether her conduct was willful and malicious for purposes of Section 523(a)(6) in this nondischargeability action. Clark's actions were willful and malicious.

---

[9] Case No.6:06-bk-01227-ABB, Doc. No.95.
[10] Doc. No. 40.
[11] The record in this Court does not contain Shapiro's complaint in the Superior Court. Consequently, the Court relies upon the final decision in the California Default for the establishment of the elements of the causes of action.

No facts establishing the existence of an express or statutory trust relationship are found in the California Default. The elements of nondischargeabilty required pursuant to Section 523(a)(4) have not been met.

Clark argues, despite existence of the elements of collateral estoppel, the Court may decline to apply collateral estoppel in this case, because it would result in a "manifest injustice" to her. Clark's support for her assertion is that she "has had no relationship or transaction with [Shapiro] that could be the basis of a claim for exception of discharge." Clark already presented the argument to both the California Trial Court and the Court of Appeals without success. It is not one that rises to the level of unusual circumstances under which this Court should set aside the principles of collateral estoppel established pursuant to California law. No equitable exception is applicable.

## CONCLUSIONS OF LAW

Shapiro seeks a determination that Clark's obligation to pay the California Default is excepted from Clark's discharge pursuant to 11 U.S.C. §§523 (a)(2)(A) and (a)(6) and Clark is estopped from challenging the nondischargeability of the California Default Judgment.

### *11 U.S.C. Sections 523(a)(2)(A) and 523(a)(6)*

The party objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence.[12]

Section 523(a)(2)(A) of the Bankruptcy Code provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

---

[12] Grogan v. Garner, 498 U.S. 279, 291 (1991); Fed. R. Bankr. P. 4005 (2006).

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.[13]

A plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action: (i) the debtor made a false representation to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified[14]; and (iv) the creditor sustained a loss as a result of the misrepresentation.[15] The objecting party must establish each of the four elements of fraud by a preponderance of the evidence.[16]

Section 523(a)(6) provides any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable.[17] The United States Supreme Court ruled in Kawaauhau v. Geiger[18] that to establish the requisite willful and malicious intent of Section 523(a)(6), a plaintiff must establish by a preponderance of the evidence the injury was intentional—that the debtor intended the consequences of his or her act. The Supreme Court explained, because "willful" modifies "injury" in Section 523(a)(6), nondischargeability requires conduct that inflicts an injury intentionally and deliberately, "not merely . . . a deliberate or intentional *act* that leads to injury."[19]

---

[13] 11 U.S.C. § 523(a)(2)(A) (2006).
[14] The Supreme Court held in Field v. Mans, 516 U.S. 59, 73-5 (1995) that Section 523(a)(2)(A) requires justifiable reliance rather than the former higher standard of reasonable reliance: "[W]e hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance."
[15] SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998).
[16] Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).
[17] 11 U.S.C. § 523(a)(6).
[18] 523 U.S. 57 (1998)
[19] Id. at 61-2.

9

### *Collateral Estoppel Doctrine and Federal Rule of Civil Procedure 56*

All elements required for the nondischargeability of the debt found in the California Default pursuant to Sections 523(a)(2)(A) and 523(a)(6) must have been established in the California Default for collateral estoppel to apply.[20]

Shapiro seeks summary judgment on his Complaint. Granting summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[21] No factual disputes are raised. Therefore, an adjudication of this case by way of summary judgment is appropriate.

Collateral estoppel precludes re-litigation of issues actually or fully litigated in prior judicial proceedings where each party had a full and fair opportunity to litigate the issues decided.[22] The collateral estoppel law of the state that issued the prior judgment sought by a party to bar a subsequent proceeding determines whether the prior judgment can have preclusive effect in a subsequent proceeding, and as a matter of full faith and credit, federal courts must apply the state's law of collateral estoppel.[23] Collateral estoppel principles apply to dischargeability proceedings.[24]

---

[20] Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995).

[21] Fed. R. Civ. P. 56(c) (made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

[22] St. Laurent, II v. Ambrose (In re St. Laurent), 991 F.2d 672, 675 (11th Cir. 1993).

[23] Id. at 675-76, *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 379-82, 105 S. Ct. 1327, 1331-33, 84 L. Ed. 2d 274 (1985) *reh'g denied* 471 U.S. 1062, 105 S. Ct. 2127, 85 L. Ed. 2d 491 (1985) (full faith and credit statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered"); *In re Bugna,* 33 F.3d 1054, 1057 (9th Cir. 1994).

[24] Grogan, 498 U.S. at 285 n. 11.

*California Law*

The elements of collateral estoppel under California law have been restated on numerous occasions by the California Supreme Court and various courts of appeal. In People v. Sims,[25] the court reiterated the traditional elements of collateral estoppel: (1) the issue necessarily decided at the previous hearing was identical to the one being re-litigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party. The court stated that implicit within those elements is that any issue actually litigated may be precluded.[26]

The elements were restated in a slightly different form, namely that: (1) the issue to be precluded is identical to that in the former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the judgment in the former proceeding was final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.[27]

California default judgments are deemed to have been actually litigated and are therefore given collateral estoppel effect under applicable California law. According to California law,

> a party who permits a default to be entered confesses the truth of all the material allegations in the complaint. A default judgment is as conclusive

---

[25] 32 Cal. 3d 468, 484, 186 Cal. Rptr. 77, 651 P.2d 321 (1982)
[26] Sims, 32 Cal. 3d at 484.
[27] Lucido v. Superior Court, 51 Cal. 3d 335, 341, 272 Cal. Rptr. 767, 795 P.2d 1223 *cert. denied,* 500 U.S. 920, 111 S. Ct. 2021, 114 L. Ed. 2d 107 (1991). *See also,* Garrett v. City and County of San Francisco, 818 F.2d 1515, 1520 (9th Cir. 1987).

11

upon the issues tended by the complaint as if rendered after an answer is filed and a trial is held on the allegations.[28]

The Ninth Circuit Court of Appeals, in <u>Bugna v. McArthur (In re Bugna)</u>,[29] noted collateral estoppel bars re-litigation in nondischargeability actions when

> (1) the issue decided in the prior action is identical to the issue presented in the second action; (2) there was a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party . . . to the prior adjudication.[30]

### *Nondischargeability Elements Established*

The issues in the California Default and this adversary proceeding are identical. The collateral estoppel effect of the California Default therefore precludes Clark from challenging any of the material factual issues that were both raised in the State Court pleadings and necessary to uphold the California Default. This preclusive effect applies to the factual issue of malice, since malice was alleged and the finding of malice in the California Default was necessary to uphold the punitive damage awards.[31]

The California Default establishes each requisite element of nondischargeability of a debt pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(6). Clark, pursuant to her default in the California litigation, admitted each of the allegations of the complaint.[32] The California Default conclusively established the nondischargeability elements of Sections 523(a)(2)(A) and (a)(6). Collateral estoppel applies to preclude Clark from re-litigating the issue of whether her conduct was willful and malicious for purposes of

---

[28] Bay Area Factors v. Calvert (In re Calvert), 105 F.3d 315, 318 (6th Cir. Tenn. 1997); In re Naemi, 128 Bankr. 273, 278 (Bankr. S.D. Cal. 1991)(citing *O'Brien v. Appling*, 133 Cal. App. 2d 40, 42, 283 P.2d 289 (1955)).
[29] 33 F.3d 1054, 1057 (9th Cir. Cal. 1994).
[30] <u>Bugna</u>, 33 F.3d at 1057, citing *Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1520 (9th Cir. 1987).
[31] <u>Id.</u>

[32] <u>Nishimatsu Constr. Co. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1205-06 (5th Cir. 1975).

Section 523(a)(6) in this nondischargeability action. Clark's actions were willful and malicious.

### *11 U.S.C. Sections 523(a)(4)*

A plaintiff asserting nondischargeability pursuant to Section 523(a)(4) must establish by a preponderance of the evidence the debtor was acting in an express or statutory trust capacity at the time of the alleged actions. Collateral estoppel does not apply to Plaintiffs' Section 523(a)(4) claims for two independent reasons. First, any finding that Clark's alleged wrongful conduct was committed in a fiduciary capacity is not necessary to uphold the decision. Second, even if such a finding were necessary, it is well established an express or statutory trust relationship must exist between the parties in order for a debt to be found nondischargeable under Section 523(a)(4). The meaning of "fiduciary capacity" under Section 523(a)(4) is a question of federal law. Federal law has consistently limited this term to express or technical trust relationships.[33] No facts showing the existence of an express or statutory trust relationship with Clark are found in the California Default. The broad, general definition of fiduciary - a relationship involving confidence, trust and good faith - is inapplicable in the dischargeability context.[34] The elements of nondischargeabilty required pursuant to Section 523(a)(4) have not been met.

### *Equitable Exception*

Clark argues that the Court can decline to apply collateral estoppel in this case because it would result in a manifest injustice to her. The Court has the discretion not to apply collateral estoppel; exercise of that discretion requires an unusual set of

---

[33] Davis v. Aetna Acceptance Co., 293 U.S. 328, 333, 55 S. Ct. 151, 153, 79 L. Ed. 393 (1934).
[34] Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. Cal. 1986)

13

circumstances.[35] Clark's sole support for her assertion is that she "has had no relationship or transaction with [Shapiro] that could be the basis of a claim for exception of discharge."[36] Clark already presented the argument to both the California Trial Court and the Court of Appeals without success. It is not one that rises to the level of unusual circumstances under which this Court should set aside the principles of collateral estoppel.

## *Conclusion*

Shapiro did not establish the elements of nondischargeabilty required pursuant to 11 U.S.C. Section 523(a)(4). Shapiro established all the elements of 11 U.S.C. Sections 523(a)(2)(A) and (a)(6) and is entitled to a judgment that Pamela Clark's obligation to pay the California Default Judgment is exempted from discharge pursuant to title 11 U.S.C. Sections 523(a)(2)(A) and (a)(6).

A separate judgment in favor of Shapiro and against Pamela Clark consistent with the Memorandum Opinion shall be entered contemporaneously.

Dated this 16th day of January 2009.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge

---

[35] In re Hartnett, 330 Bankr. 823 (Bankr. S.D. Fla 2005), Jenkins v. County of Riverside, 138 Cal. App.4th (Cal. App. 2006).
[36] Doc. No. 42 at p. 5.